and we appreciate the arguments in the previous case, both of them. Thank you. Good morning, your honors. May it please the court. I'm Robert Greenspan for U.S. Inventor and the plaintiffs and appellants. This court should reverse because plaintiffs pleaded concrete injury and that injury was fairly traceable to unlawful conduct. That's standing. We know from Massachusetts V. EPA that standing doctrine exists to, quote, ensure proper adversarial presentation so that federal courts don't devolve into, quote, debating societies, leaving judges without a, quote, realistic appreciation of the consequences of their actions. Granting standing here is completely consistent with this aim and this doctrine. The patent office With standing, could you address whether we have jurisdiction to hear this appeal and whether or not the federal circuit has exclusive jurisdiction to hear this appeal? Absolutely, your honor. And I know the patent office raised the appellate jurisdiction question and I could do this briefly or at length as your honor likes, but on that point Briefly. Okay. Regional federal appeals courts routinely accept appeals in non-patent cases against the patent office or its director. And like in the previous case we heard, I apologize, I'm going to cite some cases that weren't in the briefs, but I'd be happy to submit them through Rule 28J. But these are easy to find on Lexis or what have you. These cases implicate how the patent office follows their own rules. So in other words, rules that are deep in the Patent Act or come out of the Patent Act don't necessarily shunt a case to the federal circuit. One argument that's being made by the government in this case is to understand whether more needed to be done, whether notice and comment rulemaking needed to be done, you need to know what does that provision means, whose number you know, and I don't. When it says these regulations, by regulation or some such word, factors to guide the exercise of discretion must be determined. So that has to be interpreted. That's patent law. We interpret it one way here, somebody else interprets it someplace else in the Ninth Circuit. Sounds like something at least arguably ought to be for the federal circuit. Well, Judge, if the standard is So it's not just an APA case, which is obviously the issue. Is it just an APA issue or is it too tied to what is required by the AIA? Well, take a look at our theory of relief, Your Honor, that talks about SOP 2. That's the framework under which they've decided that they can circumvent notice and comment rulemaking. That document is not notice and comment rulemaking. I mean, we don't need to go to the Patent Act to interpret the Patent Act to make that conclusion. So that document does, under our theory of the case, contain or constitute or enable rules to be made through ad hoc adjudication. So that's a theory of relief to prove that the USPTO violated the APA by omitting notice and comment rulemaking and botching it, doing it wrong. It does not rely on any interpretation of the AIA whatsoever. Now, the Patent Office's response to that is that that is a rule that's based on our power of management of the Patent Office. They cite some of the very low numbers in the Patent Act where they have authority to hire employees and manage those that they've hired and so on. But if that were a correct theory of why there's federal circuit jurisdiction, then why do other regional courts of appeals handle employment discrimination cases against the Patent Office? That's Perry v. Capos from the Fourth Circuit. That's just a straight-up employment discrimination case. One could say they were just trying to comply with their obligations under the Patent Act to manage their employees, and that's what the case was about. But the Fourth Circuit took that. And then there are cases like Federal Tort Claims Act case violations. Federal Tort Claims Act cases that allege negligent botching of patent application recordkeeping. Okay? So that's how do they operate under the Patent Act? Well, they keep records of their patent applications. There's a case called Boyle v. United States in the Third Circuit where the Third Circuit took jurisdiction of that case. And then there are Bivens actions for causing damages through unlawful patent lawyer discipline proceedings. I mean, that clearly arises out of the rules that the Patent Office uses to conduct its operations. What are the rules of professional discipline for the Patent Office? The case Goldstein v. Moatz from the Fourth Circuit, Presidential, 364 F. 3rd, 205, shows the Fourth Circuit took that case. The Federal Circuit did not. Those are like shells around patent law, if you will. It's sort of like the moat or the fence around maybe a patent law issue. But the patent law issue is never reached in cases like these where the regional courts of appeals properly take the case. But if this involves whether notice and comment rulemaking were required, the Federal Circuit would hold that it had exclusive jurisdiction, wouldn't it? We would create a circuit split with the Federal Circuit on whether it has exclusive jurisdiction, wouldn't we? Your Honor, I respectfully would disagree with that. Well, okay, help me why. Because notice and comment rulemaking about a matter that's not involving a substantial question of patent law will never have to go to the Federal Circuit. We don't have to get them involved. Only a, quote, substantial question of patent law under the Christensen v. Colt case would require Federal Circuit jurisdiction in any case. And here, the substantial question of patent law, our case law teaches, means patent law that adjudicates whether a particular patent is going to be held invalid, infringed, unenforceable, whatnot. Great example, Your Honors, the Zeitronics case from this Court, where there's a little bit of a debate between the Federal Circuit and the Fifth Circuit. In the Zeitronics case, this Court held, among one of its holdings, was a Walker process-type antitrust case, if and only if the only issue is fraud on the patent office, must go to the Federal Circuit. So that was a great example of what we are not. What about Helfgott? Yes, Helfgott was a case concerning whether a particular patent application would be entitled to continue its prosecution through the patent office. So that was a case that was going to determine whether a specific application that hadn't been granted yet was going to switch back on in terms of it going through the process of examination in front of examiners. So this case will never, whatever outcome happens in this case at the lower court on remand, the lower court will never adjudicate the validity of any particular patent. It will never dictate how the USPTO must conduct patent application granting procedures. Those are just very far removed from what's going on in this case. I know you've been talking about this, but in light of that summary you gave, why isn't it, though, necessary to determine how the AIA requires these particular standards to be developed by regulation? Well, the first answer, Your Honor, number one is the word shall is in the statute. There's no interpretational dispute about the word shall. And the second answer, Your Honor, it's a... Are you saying regulation necessarily means notice and comment? I'm sorry? Are you saying regulation in the statute necessarily means notice and comment? Is that why there's no interpretive need? It's, the statute is the USPTO, or the director, rather, shall promulgate regulations concerning the sufficient grounds determination under 314A. Right, so what I'm saying, the director shall prescribe regulations setting forth the standards, et cetera. Are you saying regulations by itself means there has to be notice and comment? Given the subject and the target of the regulations, absolutely. They're substantive regulations. Well, here from the other side, I didn't know that you were putting that much weight on the word regulation. What do you do with the Fifth Circuit case, and I'm not going to get it right, Scherbetskoi v. Halliburton, that talks about, which I don't think was in the opening brief, but the government talks about, in that opinion, I'm not sure factually where the credit applies, and if you're not that familiar, it may be considered a very secondary case in your argument, and you may not be ready to respond to this. But it talks about jurisdiction not being exclusive in this appeal, but being concurrent. I couldn't tell from the analysis exactly what issue that particular concurrent jurisdiction argument is going to. Are you familiar with that case, and can you tell me what concurrent jurisdiction? Are we looking at, are you arguing the Federal Circuit doesn't have jurisdiction, or it doesn't have exclusive jurisdiction? And I thought Scherbetskoi might have some bearing on that. Yes, Your Honor, and I apologize, I didn't prepare to discuss that case today. It was not a significant case in your briefing, and I understand, but just respond to the overall question. Right, the overall framework is it's binary. Either the Federal Circuit has jurisdiction in this case, or this Court does. There can't be an in-between concurrent jurisdiction answer to the question. I think both sides would agree on that. Well, we'll see. At least I didn't. All right. So it can't be that it could have been there, but it can also be here. Correct. Because we have that in a number of contexts. We have that in a lot of, in a number of EPA and other kinds of cases where it could be in the regional, but could it also be brought in the... Yeah, Judge Elrod, I've just never seen any suggestion that there could be a concurrent situation like that. Okay. But something that's a close cousin to that issue is this notion from cases like the Lipitor case, where if there are two theories of relief on the claim, and one of them involves something that is not a substantial question of patent law, then the case stays in the regional Circuit Court of Appeals. So that distinguishes the Zitronix case in this Court. In Zitronix, there is a Walker process claim, and only a Walker process claim that was the seed of an antitrust count or case. Do you want to talk about standing before your time has gone? I would love to talk about standing, and, Judge, I mean, this will somewhat feed into the jurisdiction issue, which is, I view this, forgive me for being colloquial, and this means no disrespect. I'm going to create an analogy that's not disrespect for the great and wonderful employees of the Patent Office. But inventors see this world or this framework as if you have a bonfire in the middle of a stadium, and there's a blindfolded bureaucrat who throws paper patents at the bonfire. One out of six doesn't get burned. That's great. But the issue in this case is about the bouncer at the front door of the stadium. The issue in this case is, who is that bouncer? Is that bouncer strong enough? Is that bouncer at the front door of the stadium going to adequately remove from this process, through notice and comment, the types of patents that shouldn't go into it? Well, you're focusing on something that concerns me about your argument, which is, whatever the definition is on procedural injury, of how likely that injury has to be, help me with the plaintiffs in this case, as well as the representative party. What is the likelihood of any particular patent getting into this process? What you're talking about is, if you have to, I don't know if I can continue the metaphor or not, if you have to go in the stadium, you're going to get burned up almost certainly. But how many patents have to go through that? How many appear at the bouncer? Basically, every valuable patent has to go through this process. And it's because any time there's a lawsuit where someone alleges there's infringement of a patent because it's creating damages and the millions or tens or hundreds of millions of damages against the patentee, the opponent of that patent owner is going to throw the case involuntarily into the PTAB. So virtually all important patents get thrown in. Of course, if somebody's just sitting in their rocking chair with a framed patent that they're very proud of as a trophy, that won't go into the process. Case law supports standing, Your Honors, and I'd be happy to go into that, but I see I'm into my rebuttal. Well, I'm two minutes from my rebuttal time, correct? Well, I'd change, but you're not quite there. Thank you. So case law supports standing because there's no principled reason under our law of Article III standing why appellants here differ in any way from the residents adjacent the federally licensed dam in Lujan Footnote 7. In both cases under Supreme Court guidelines, every prong of Article standing is there. This includes concrete injury and fair traceability. And quick analogy with Lujan. The residents there complained of agency inaction or botched action, the lack of proper environmental impact statement. So it is here as well. It does seem to me that the footnote example, though, that both sides are using, the risk is clear there with the dam, and it gets back to my question to you earlier. I'm just not sure we can quantify the risks so clearly. I don't think you assume injury. You can assume that proper procedure had been followed, that a better outcome would have been reached, but I don't think you then assume that I'm injured because I didn't get the better outcome. You still need to show a reasonable prospect, however defined, and I think at some, at least I'm confused on what that definition of how likely it has to be. You still have to show that. And what I've heard so far, and which may be enough, is that if it's a viable patent you're going to have to enter into this process. Well, Judge, the risk for those dragged in is extremely high, 84%. And Your Honors That's only those who get into that process. Those are the ones who have standing to bring this claim, Your Honor. So those are the ones who are bringing the claim to show that the risk is extraordinarily high, 84%. That statistic at the pleading stage ought to, under our law, be accepted as true for this purpose. And I am now into my rebuttal time. Thank you, Your Honors. May it please the Court, Wayley Shaw for the United States. Division of DOJ, are you? I work in the Civil Division for the appellate staff. I'd like to begin with the issue of appellate jurisdiction. Plaintiffs' claims in this case go to the very heart of patent law and to how the patent system works. Plaintiffs' ultimate goal in this case is to change how the director exercises her discretionary authority to deny institution of IPR and PGR proceedings. Plaintiffs even ask the district court to completely shut down these two critical patent processes entirely until... They don't deal with whether or not an actual patent is valid or not, which is the central core of what is preserved for the Federal Circuit. And so I don't think there's anything in the jurisdictional statutes governing this case that actually draws this distinction between whether an issue concerns a specific patent or whether it's something pertaining to the USPTO's operation of the patent system as a whole. And I would just read to you the jurisdictional provision in this case, which is 28 U.S.C. 1295A. And that provision says the United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a final decision of a district court of the United States in any civil action under any act of Congress relating to patents or plant variety protection. So there is no dispute in this case that both the Patent Act and the America Invents Act, which amends the Patent Act, are acts of Congress relating to patents or plant variety protection. Let me ask you, Mr. Hirchfield, are you saying, Hirchfield, that so long as a patent, the you cannot have a straight-up APA claim that would not implicate patent law? I'm not saying, I don't know if it's possible, but certainly these You're saying this isn't that Right. These APA claims certainly do implicate patent law because I mean, after some exchange that you heard with your friend on the other side, what has to be interpreted from the AIA or some other patent statute in order to decide whether there's an APA violation here? Absolutely. So in this particular case, for example, with respect to the first claim raised by plaintiffs, the statutory provision of the AIA that has to be interpreted is, well, there are two, 35 U.S.C. 316a and 326a. And those provisions direct the director of the U.S.PTO to, and I quote, prescribe regulations setting forth the standards for the showing of sufficient grounds to institute a review. The proposal says regulation means notice and comment. Do you agree with that? To be honest, I have not particularly considered the meaning of the word regulations. I mostly thought of this case as arising or as turning on the interpretation of the phrase, the showing of sufficient grounds to institute a review. And the difference in the interpretations that the government advances and those advanced by, or in that advanced by plaintiffs is that we interpret that provision to pertain only to the statutory minimum criteria for instituting an IPR or PGR proceeding. And the director has, in fact, promulgated notice and comment regulations that speak to that issue. We do not interpret that statute to speak to the factors that the director considers when she exercises her discretion to deny these types of proceedings. So you have some kind of guidance that just is the whole gateway that no one can actually have notice and comment and participate? I don't understand. I mean, that would be an awesome power. Well, I don't want to, I mean, again, I don't think this Court needs to decide the merits of that question. The key issue is that there is a substantial dispute between the parties about what this provision means. Does it mean promulgate regulations just with regard to the statutory minimum criteria, or does it also mean promulgate regulations with regard to her discretionary authority to deny institution? And to decide this case, to decide that claim, this Court must interpret that provision, and that creates a substantial question of federal patent law that places this appeal within the exclusive jurisdiction of the federal circuit. The lawyer with the Department of Justice certainly knows that when you say regulation, you mean that it has notice and comment. Again, I— That's a regulation. That's the process. I hesitate just because, you know, to be honest, that's not an issue I considered here. Again, that's not how I understood the dispute in this case. But even if the dispute were to arise, this Court must interpret the patent law to decide the merits of—or, I'm sorry, or the district court would have to decide—interpret the patent law to decide the merits of the claim, and therefore this case arises or is under the exclusive jurisdiction of the federal circuit. Well, we have a case that Judge Southwick has already discussed with the opposing counsel, the Scherbatsky case— Oh, the Halliburton case. Because I'm not sure how to pronounce Scherbatskoy or something. Anyway, in which we said that even if a case has patent law elements, we have inherent jurisdiction to consider our own jurisdiction, which is whether or not to determine whether the district court had jurisdiction. So why can't we consider jurisdictional questions like Article III standing on appeal from the district court, regardless of whether it has patent law elements? Because what we're being asked in this particular appeal is to decide Article III standing, which we write smack dab in our wheelhouse and we do every day. I think that's a difficult question of whether it's permissible—you know, what the correct order of adjudication is. I would contend that the sort of—at least to me, the more difficult is to consider the appellate jurisdiction of this court to decide the standing question. But you know, I don't have any authority that speaks to sort of what the— I think they're equal. I think we can do them whichever order we wish, can't we? I don't have a clear precedent to cite to you on that point. I would contend that the better course would be for this court to ensure that it has appellate jurisdiction first before it decides anything else, because, you know, that just seems to be the more logical order of consideration. But we would have appellate jurisdiction to determine whether or not the district court erred in making a jurisdictional determination. Well, I think the question is— For our own precedent. Certainly in a case—I think, Your Honor, you're referring to the principle that even if plaintiffs lack standing and if the district court were to conclude—or decides that question, this court has jurisdiction to review the standing question. But here, I think there's a precedent issue—a precedent question—I'm sorry, an antecedent question of which court should decide that standing question. And I think Congress has allocated that authority to the Federal Circuit. So the preference—it seems to me that the logical way to consider the issue would be to have the Federal Circuit decide that standing question in the first instance. So I just want to respond to the point as well that was made by plaintiffs, that regional circuits routinely accept APA cases regarding the USPTO's administration of the patent system. I don't think that's true at all. In fact, I've looked through every decision of this USPTO. There is not a single decision that purports to review how the USPTO administers the patent system, whether in the context of an individual patent or a sort of broader patent system-wide principle, and that's whether it be under the guise of an APA cause of action or any other cause of action. There simply is no precedent in this Court for doing that. And on the other side of the scale, the Federal Circuit has frequently considered APA cases that speak to APA challenges to USPTO rulemaking and also to adjudications. So that is a kind of subject matter that arises regularly within the Federal Circuit. And we cite specifically one case, I think the name is Michaleni, that considers exactly the type of question at issue here, which is, was notice and comment rulemaking required? Do you want to talk about Article III standing? Yes, absolutely. So with regard to standing, plaintiffs in this case have a right to stand and the allegations in their complaint do not establish either injury in fact or causation. Oh, can you discuss whether causation is waived because it wasn't presented in the district court as the reply brief says? No, it is not waived, and in fact I don't think it's possible for it to be waived. I think the cases that plaintiffs cite speak to the proposition that it's possible to waive arguments against standing to be waived because they go to the jurisdiction of the court, which is a constitution. So you could wait and tell the Supreme Court some brand new argument and that would be okay? Yes, in fact, I also want to speak to the question of why was this not presented below? And the reason that causation didn't come up below was because both the district court and the government understood plaintiffs' theory of injury differently than they present it now. I think both the district court and the government interpreted the plaintiffs to cite the injury of having to take part in an IPR or PGR proceeding. And so therefore, I guess to them the issue was very simple that, well, that's just not an injury at all, and so therefore you lack standing. Now before this court, plaintiffs are framing their injury differently. They're saying, well, our injury is not having to participate in the proceeding. Our injury is the fact that ultimately we have a higher likelihood that our patent claims will be canceled. And so because obviously that is an injury that is much further down the line, then causation becomes more of an issue because this court and the district court have to determine that this government action, which is deciding what factors to consider in exercising the director's discretionary denial authority, the court has to find that that action will in turn cause this subsequent injury. And so that's why causation is now more an issue here than it was in the district court. And so to prevail on this theory of standing, plaintiffs need to allege specific facts that create a plausible inference that the current factors that govern discretionary denial significantly increase the likelihood that their specific patent claims will be canceled, as opposed to a hypothetical world where the director uses notice and comment rulemaking to come up with the same factors. Moreover, under the Summers decision of the Supreme Court, plaintiffs can't just rest on a probability that some of its members or that some plaintiff will have some unspecified patent be canceled. They have to identify specific patents belonging to specific individuals or organizations as to which they are likely to suffer these injuries. And plaintiffs' allegations just do not satisfy that standard. First... Can I ask, at this exchange, yes, counsel, if basically every patent had to go through this process and the only issue was what standards would be used to dismiss the petitions, discretionary standards, would there be standing to make that argument? I'm sorry, if every patent had to go through this process. Every patent had to go through this process. And the issue is, should notice and comment have been employed rather than what was employed instead to come up with the standards? The standards are too harsh on current patent holders. The implication is, if our procedural, if the proper procedure was followed, a better set of standards from our viewpoint would have been provided. Would there be standing to make that? I'm trying to get to, how much is the focus that we don't know which patents in the plaintiff's inventory, if any, are going to be subjected to that? Is that part of the argument that we don't know which ones? That is certainly part of it. I'm going to use my hypothetical. What does that do to your issue? Right. I still, maybe I'm not entirely understanding the hypothetical, but let me know if this So even setting aside that they haven't identified specific patents, there's no, you know, I think that plaintiffs are misunderstanding the system when they say that, you know, every patent has to walk through the door. Because what they're leaving out of their statistics or the description of the process is that there is a high merits threshold for a proceeding to be instituted in the first place. And that minimum threshold doesn't have anything to do with the factors that are at issue here. Those are statutory criteria that have to be met before a proceeding can be instituted. You're not dealing with my hypothetical. You're going back to the facts of this case. Yeah. And I find this may be another way to deal with it. I'm trying to get past that threshold of not knowing which patents, and what percentage or what numbers of patents would have to go through this. What do you say to their argument, as I understand it, that the procedural injury here that you can assume, if the proper, for purposes of Lujan's analogy, you can assume that had the proper procedure been followed, notice and comment, the standards would be more forgiving, would be more favorable to the plaintiff. And you start there and figure out whether they have shown injury, causation, redressability. So you can assume under Lujan that the standards would be different, that the government decision maker in here, the director of the USPTO, would have made a different decision. Now, you still have to prove, I think as Your Honor was indicating, that having different factors would, in fact, lead to a lower probability, a significantly lower likelihood that their patent claims would be canceled. And that's very problematic. So you could imagine, say, if plaintiffs had identified some, maybe they think that the factors should disfavor or weigh in favor of denial of institution with regard to particular categories of patents, say. And I don't know, because it's not specified in their complaint. Then plaintiffs could say, well, we think that the factors should discourage institution in these cases, and we have patents that fall into those particular categories. And therefore, we are more likely to have the director exercise her discretionary authority in our favor because we have these particular types of patents. But then they would still have to show, one, that there are third parties who are interested and able to petition for review in a way that would satisfy the statutory minimum criteria. They would have to show that even if they have to go through this IPR or PGR process, that they are actually more likely to have their patents canceled than if they were to go through district court litigation. They certainly have not shown that. If you look at the statistics, the 84% number is extremely misleading because, as I indicated earlier, that 84% is after there's already been a merit screening stage. So obviously, petitions that have gone through merit screening are more likely to succeed. But if you look at all petitions that are filed... You know numbers of how many are screened out, percentage wise? I think that data might exist. I don't have that particular data point. Right. But the data that I do have is that out of all petitions that are filed, 23% of patents have one or more claims invalidated, and 16% of patent claims are invalidated through the IPR or PGR process. Now, the statistics that we cite indicate that going through district court litigation means that a claim is invalidated, one or more claims are invalidated in 40 to 50%... Roughly 40 to 50% of cases. And plaintiff's own complaint says that 29% of cases that go through district court litigation have a claim invalidated. So even if we were to set plaintiff's 29% number, the 23 or 16% number for IPR or PGR proceeding is actually lower than what happens through district court litigation. So there's simply no evidence to support this metaphor or analogy of the patent-only office throwing patent claims into the fire. That's simply not correct. I would also point out... Would you grapple with all that, though, at some other stage when the district court grappled with that, of whether it's actually true or not later on in the case? If it survived? I mean, I think they have to just say why they would have standing and you can say that that wouldn't give them standing, but you can't say that their facts are wrong. Well, no. I don't think that... It's not that their facts are wrong. It's that they are citing a statistic that is misleading on its face. It's evident on the face of the complaint. The statistic they cite is that after a petition is instituted, 84% result in the cancellation of one or more claims. But that's after... If we look at the procedure itself, it's obvious that there's an antecedent step, which is that there's a merit screening for the petitions that are the most meritorious. Okay. Why can't they just say we are an organization that our members don't want the patents to be screened any more beyond the statute? And you can't throw us into this by screening beyond the statute because the director doesn't have any discretion to go beyond the statute. And so any time that anything is beyond the statute, even one time, and this is on behalf of our members and we know that things are being screened on behalf of their statute, even if it's admitted that it's beyond the statute, that we on behalf of the organization say that this is not fair to inventors. Why isn't that good enough? I see that I'm over my time, but if I could just respond. That's exactly why I asked the question. Yes. So first, I don't understand plaintiffs to actually make the claim that the director doesn't have any discretion. And if they did, that argument would be contrary to Supreme Court precedent. The Supreme Court has said several times, including in the Arthrex decision that we cite in our brief, that the director has unreviewable discretion to deny institution of these petitions, and that there's no obligation to institute, and that the director has discretion to determine when not to institute after the statutory criteria are met. And so I don't think that's actually an issue in this case. Thank you, counsel. Thank you again, Your Honors. My colleague's concession at page 35 of the red brief cuts through a lot of these issues, because there, the USPTO, the director, conceded that real rules would be presumed under this analysis to give more and better PTAB off-ramps to inventors. Page 35 of the red brief. If you're not hearing it from me, you can hear it from me, but I'm not going to admit that the district court's analysis was incorrect. So on the statistics, Your Honor, it's in the, I don't think, one of the numbers I'm going to give you is in the district court record, probably not in the briefs, 68% of petitioned patents get past the bouncer. So only 32% or so are held to be below the eligibility threshold or otherwise get booted out on discretionary grounds. So how do these, this data come in? You have something in your complaint for the district judge when he made his ruling. I mean, is there some sort of evidentiary submissions that were made? Are we talking about, but go ahead. Yes, Your Honor. The declaration of Josh Malone contains that as well as a link to a page on the internet with his analysis. There's certainly for a pleading motion, there's sufficient information there for the district court to get underneath the surface if there's a desire. And then 84% of what get past the bouncer get thrown onto the bonfire. That's our problem. So there's no conjecture here. I thought you liked the metaphor of death squads or something. And Your Honor, that was Judge Rader of the Federal Circuit. That was Chief Judge Smith of the PTAB in his earlier days. So I mean, this is not, I'm just not talking to you and saying things. I mean, there's really a record that's been built over the years about how devastating and demoralizing this is. I just want to know how this would work. If we disagree with you and decide this is a Federal Circuit business, and whether we enter an order or just dismiss your appeal, what happens then? I suppose it gets transferred to the Federal Circuit and we... No, just on my timeline. Here we are at this stage dealing with this appeal. Nothing's happened in the Federal Circuit, I imagine, as our case has proceeded? It would take another year, at least, off of our attempt to get relief from this catastrophe. At least another year. Would we dismiss or would we transfer? Because isn't there already a placeholder lawsuit? It's totally up to Your Honors. I think we would be fine either way in terms of procedural rights because of our Conditional Protective Notice of Appeal. We're not there yet. Yeah, I'm not foreshadowing. I'm just... Both of you, Your Honors. So back to the merits, if I can just run through a few quick points before my short time is up. The Lujan residents would face higher risk of total property annihilation because of rising dammed waters. That was the point. So it is here as well because inventors face higher risk of total property annihilation, their patents off in their livelihood when dragged into invalidation procedures that are missing the off-ramps that would exist as conceded after real rulemaking. Even if the question, and back to the jurisdictional issue, if the question was one of is patent law in the background of this case, I would concede there's jurisdiction in the Federal Circuit. But that's not the framework. It's a substantial question of patent law. The word substantial is always in the statement of the legal standard for appellate It's just as Your Honors explained as a court in the Zeitronics case, when distinguishing the Gunn case, Gunn v. Minton, that in the Gunn v. Minton case, no particular patent was ever going to be scratched. Whereas in the Zeitronics case, there is a patent that if the plaintiff got its way, was going to be held unenforceable for fraud on the patent office. It's exactly that distinction here. The ultimate outcome at the district court in this case, not a single patent will be scratched or lionized. Not at all. This is about how an agency deals fairly under the law with its stakeholders. Yes, a court always, Your Honor, Judge Elrod, yes, a court always has jurisdiction to decide its own standing or to decide its own jurisdiction. And Article III is a jurisdictional front issue. Next, the list of cases we cited, that I cited, Boyle v. United States, Goldstein v. Moatz, Perry v. Kapos, those are cases against the USPTO, implicating how they operate under their own rules, regulations, and statutes. As in our reply, jurisdictional facts may be conceded, as the USPTO did. That's the Engineering Contractors Association case from the 11th Circuit. And finally, on the point of identity of plaintiffs, we bring specific plaintiffs with specific patents, plus an association. This is not a generalized grievance case. And, Your Honors, in the appellate record, declarations of David Rusick and Andrew Gordon satisfy that criteria. Thank you, Your Honors. If there are no further questions, we simply ask that the cause be reversed. Thank you. We have your arguments. To the extent that you told us you were citing from cases not in your brief, you must let the court and the opposing counsel give them the citation in the 28J letter within five days, and then opposing counsel can respond to that within five days. Because normally, the rule is that you have cited what you have referred to in the oral argument. So, thank you. Thank you, Your Honors. Thank you.